CLERKS OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED
2/8/2023
LAURA A. AUSTIN, CLERK
BY: s/ ARLENE LITTLE
       DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | |
|---|---|
| JESSICA L.[1], <br> **Plaintiff,** <br><br> v. <br><br> KILOLO KIJAKAZI[2], Acting <br> **Commissioner of Social Security,** <br><br> **Defendant.** | Civil Action No. 6:21-CV-41 |

**REPORT AND RECOMMENDATION**

Plaintiff Jessica L. ("Jessica") filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") finding her not disabled and therefore ineligible for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act ("Act"). 42 U.S.C. §§ 401–433, 1381–1381f. Jessica alleges that the Administrative Law Judge ("ALJ") erred by: (1) concluding that her mental impairments and fibromyalgia are non-severe impairments; 2) failing to properly determine her physical residual functional capacity ("RFC"); and (3) improperly assessing her subjective allegations. I agree that the ALJ's analysis of Jessica's non-severe impairments is not supported by substantial evidence. Accordingly, I **RECOMMEND GRANTING** Jessica's Motion for Summary Judgment (Dkt. 15), **DENYING** the Commissioner's Motion for Summary Judgment (Dkt. 19), and **REMANDING t**his case for further administrative proceedings consistent with this opinion.

---

[1] Due to privacy concerns, I use only the first name and last initial of the claimant in social security opinions.

[2] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi is hereby substituted for Andrew Saul as the defendant in this case.

## STANDARD OF REVIEW

This court limits its review to a determination of whether substantial evidence supports the Commissioner's conclusion that Jessica failed to demonstrate that she was disabled under the Act.[3] Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations and alterations omitted); see also Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019) (emphasizing that the standard for substantial evidence "is not high"). "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." Mastro, 270 F.3d at 176 (quoting Craig v. Chater, 76 F.3d at 589). Nevertheless, the court "must not abdicate [its] traditional functions," and it "cannot escape [its] duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). "The inquiry, as is usually true in determining the substantiality of evidence, is case-by-case." Biestek, 139 S. Ct. 1148. The final decision of the Commissioner will be affirmed where substantial evidence supports the decision. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

However, remand is appropriate if the ALJ's analysis is so deficient that it "frustrate[s] meaningful review." Mascio v. Colvin, 780 F.3d 632, 636 (4th Cir. 2015) (noting that "remand is

---

[3] The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects his ability to perform daily activities or certain forms of work. Rather, a claimant must show that his impairments prevent him from engaging in all forms of substantial gainful employment given his age, education, and work experience. See 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

necessary" because the court is "left to guess [at] how the ALJ arrived at his conclusions"); see also Monroe v. Colvin, 826 F.3d. 176, 189 (4th Cir. 2016) (emphasizing that the ALJ must "build an accurate and logical bridge from the evidence to his conclusion" and holding that remand was appropriate when the ALJ failed to make "specific findings" about whether the claimant's limitations would cause him to experience his claimed symptoms during work and if so, how often) (citation omitted).

## CLAIM HISTORY

Jessica filed for SSI and DIB benefits in November 2018, claiming that her disability began on November 15, 2014. R. 18.[4] The state agency denied Jessica's claims at the initial and reconsideration levels of administrative review. R. 65–118. ALJ David Lewandowski held a hearing on August 31, 2020, to consider Jessica's claim for SSI and DIB, which included testimony from vocational expert Mark Hileman. R. 35–64.  Jessica was represented by counsel at the hearing. On November 3, 2020, the ALJ entered his decision considering Jessica's claims under the familiar five-step process[5] and denying her claim for benefits. R. 18–30.

The ALJ found that Jessica suffered from the severe impairments of arthralgia, lumbar radiculopathy, sacroiliitis, spinal stenosis, and headaches. R. 21.  The ALJ determined that

---

[4] Jessica's date last insured was March 31, 2020; thus, she must show that her disability began on or before this date and existed for twelve continuous months to receive disability insurance benefits. R. 20; U.S.C. §§ 423(a)(1)(A), (c)(1)(B), (d)(1)(A); 20 C.F.R. §§ 404.101(a), 404.131(a).

[5] The five-step process to evaluate a disability claim requires the Commissioner to ask, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his past relevant work; and if not, (5) whether he can perform other work. Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R.§ 404.1520); Heckler v. Campbell, 461 U.S. 458, 460–62 (1983). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. At the fifth step, the burden shifts to the Commissioner to establish that the claimant maintains the RFC, considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies.  42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

Jessica's lymphadenopathy, pharyngitis, macular degeneration, fibromyalgia, and sleep apnea were not medically determinable impairments. The ALJ determined that Jessica's mental health impairments were medically determinable impairments, but they did not cause more than a minimal limitation in her ability to perform basic mental work activities and were non-severe. R. 21–23. The ALJ determined that Jessica's severe impairments, either individually or in combination, did not meet or medically equal a listed impairment. R. 24–25.

The ALJ concluded that Jessica retained the residual functional capacity ("RFC") to perform medium work, except that she can lift or carry 40 pounds occasionally and 20 pounds frequently; frequently bend, stoop, crouch, and squat; should avoid loud noise such as heavy traffic; and should avoid bright light but would be able to tolerate light found in an office setting. R. 25.

The ALJ determined that Jessica was capable of performing her past relevant work as an office clerk and customer service representative. R. 28–29. The ALJ also determined that she could perform other work that exists in the national economy such as marker, housekeeper cleaner, and routing clerk. R. 30. Thus, the ALJ concluded that Jessica was not disabled. Id. Jessica appealed and the Appeals Council denied her request for review on June 1, 2021. R. 1–6.

## ANALYSIS

### I.   Medical History Overview

#### a.   Mental Health Treatment

Jessica has a history of bipolar disorder, attention deficit hyperactivity disorder, depression, anxiety, and post-traumatic stress disorder ("PTSD"). In March 2017, Jessica was hospitalized for five days in a mental facility after overdosing on benzodiazepines. R. 608. Jessica was discharged in stable condition with diagnoses of opioid use disorder, PTSD,

benzodiazepine use disorder, and recurrent major depressive disorder. She was prescribed Zoloft and Trazodone for depression. R. 353. Jessica followed up with nurse practitioner Laura Breitzig, for an intake psychiatric evaluation on April 20, 2017. R. 372. Jessica reported her previous diagnosis of PTSD due to past physical abuse trauma, and noted depression, anxiety, irritability, and poor sleep due to nightmares. She also reported periodic paranoia, especially in crowded areas. Her mental health examination reflected paranoia and racing thoughts, anxious mood, ongoing depression and irritability. R. 375–76. She was continued on Zoloft, Trazodone, Prazosin, and prescribed Gabapentin for anxiety and irritability. R. 376.

On October 11, 2017, Jessica saw Heather Aldridge, M.A., at Horizon Behavioral Health for counseling intake. R. 441. Jessica reported difficulty with depression, anxiety, and mania. Id. Jessica's mental status exam reflected guarded demeanor, restless behavior, and sad/depressed mood. R. 446. Ms. Aldridge diagnosed PTSD, cannabis abuse, and opioid abuse. R. 447.

On January 11, 2018, Jessica saw Brittany Abshire, psychiatric nurse practitioner, at Horizon Behavioral Health for medication management. R. 434. Jessica's mental status was normal, other than an irritable/anxious mood. R. 436. Jessica reported that she was currently coping with her mental health issues by re-establishing mental health care, and that her living situation was good. She reported difficulty concentrating, poor sleep, irritable mood and crying spells. R. 437. Jessica's medications were continued. R. 439. Jessica returned on March 8, 2018, and reported "doing well but not quite enough." R. 430. Her mental status examination reflected low volume, pressured speech. R. 431. Jessica reported irritable mood, increased social anxiety, isolating herself, racing thoughts at times, and poor sleep. R. 432–43. Jessica's medications were increased to address her depression, severe anxiety, sleeplessness and nightmares. R. 433.

Jessica followed up with Ms. Abshire on July 7, 2018 (R. 417), August 31, 2018 (R. 409), October 9, 2018 (R. 403), November 7, 2018 (R. 394), December 6, 2018 (R. 392), January 24, 2019 (R. 496), and March 14, 2019 (R. 490).  Jessica's mood was improved in July 2018, although she had poor eye contact and anxious mood. R. 415.  However, Jessica discontinued taking her medications in August 2018, due to pregnancy. R. 409.  Jessica's mental status exam reflected a sad and anxious mood and poor insight. R. 410. Ms. Abshire discontinued Jessica's prescription for Trazodone, Prazosin and Clonazepam due to her pregnancy, and prescribed Viibryd for depression. R. 412.  Jessica's next few visits reflected sad/anxious mood, restricted affect, low volume speech delivered in a monotone, poor eye contact, and hyperactive psychomotor behavior.  R. 395–95, 401.  Jessica reported a "horrible" mood, that her anxiety was "so bad," she had strained interactions with others, frequent nightmares, daytime symptoms of PTSD, impulsiveness, irritability and decreased sleep. R. 398.

In December 2018, Jessica reported having a miscarriage, having very bad anxiety and difficulty coping. She reported increased nightmares, and requested increased medications. R. 392. In January 2019, Jessica reported that "[t]hings were really bad for a few weeks. R. 496. She reported feeling manic without her medications, still feeling irritable and angry and having anxiety. R. 500. She was diagnosed with major depressive disorder, bipolar disorder, PTSD, cannabis abuse, and opioid abuse. R. 498–99.  Jessica was prescribed Viibryd (for mood and thought), Trazodone (for sleeplessness), Clonazepam (for severe anxiety), Prazosin (for PTSD/nightmares), Vraylar (for mood and thought), and Strattera (for attention and concentration). R. 500–01.  In March 2019, Jessica reported feeling "really up and down," anxious "all the time," having poor interaction with others, poor sleep, and nightmares. R. 494.

6

She also reported not taking her medications for 7–9 days. Id. Jessica's prescription for Trazodone and Prazosin were increased. R. 495.

Jessica followed up with Ms. Abshire in May, June and July 2019, during which time she was prescribed Adderall for difficulty with concentration and completing tasks. R. 486–87. Thereafter, she had a notable improvement in her ability to concentrate. R. 465. In August, Jessica was positive for THC, and her controlled substance prescriptions were decreased. R. 599.

On October 30, 2019, Jessica saw psychiatric nurse practitioner Shameca Hudson, with Horizon Behavioral Health, and reported no longer using THC. R. 583. She reported issues with anxiety, and that her medications are not working. Id. Jessica's mood was sad, irritable and anxious, and her affect was blunted. R. 585. Ms. Hudson adjusted Jessica's medication dosages. R. 586. Jessica had a telemedicine appointment due to COVID-19 on May 13, 2020, and reported bad anxiety after a recent move, and that she's working for a custom cleaning company and Adderall helps her focus well. R. 510. Her mental status exam reflected depressed and anxious mood, constricted affect, poor insight and judgment. R. 509.

b. Medical Opinions

On April 22, 2019, state agency psychologist Howard Leizer, Ph.D., reviewed Jessica's records and determined that her mental impairments were not severe. R. 71. He found that she had the medically determinable impairments of depressive, bipolar and related disorders, anxiety and obsessive-compulsive disorders, and trauma and stressor-related disorders. Id. Dr. Leizer determined that Jessica had no difficulty with the domains of understanding, remembering or applying information; interacting with others; or concentration, persistence or maintaining pace. He found that she had a mild limitation with adapting or managing herself. Id.

On August 14, 2019, state agency psychologist Leslie Montgomery, Ph.D., reviewed Jessica's records and determined that she had the following severe medically determinable mental impairments: depressive, bipolar and related disorders; anxiety and obsessive-compulsive disorders; trauma and stressor-related disorders; substance addiction disorders; and attention deficit/hyperactivity disorders. R. 95–96. Dr. Montgomery determined that Jessica had mild impairments with the domains of understanding, remembering, or applying information and adapting or managing oneself. R. 96. She found that Jessica had moderate limitations with the domains of interacting with others and concentration, persistence or maintaining pace. Id.

### II.     Finding of No Severe Impairments

Jessica asserts that the ALJ's analysis of the severity of her mental health impairments is not supported by substantial evidence. Specifically, she alleges that the ALJ failed to sufficiently explain why he found Dr. Leizer's opinion that her mental health impairments were non-severe to be persuasive and found Dr. Montgomery's opinion that Jessica had severe mental health impairments to be unpersuasive. The Commissioner asserts that the ALJ's explanation regarding the severity of Jessica's mental health impairments is sufficient and the regulations do not require additional analysis.

An impairment is non-severe when it causes no significant limitations in the claimant's ability to work. 20 C.F.R. §§ 404.1521(a), 416.921(a). "[A]n impairment can be considered as 'not severe' only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." Evans v. Heckler, 734 F.2d 1012, 1014 (4th Cir. 1984) (citing Brady v. Heckler, 724 F.2d 914, 920 (11th Cir. 1984)). Additionally, an impairment must last, or be expected to last for a continuous period of at least 12 months to be considered

8

"severe." 20 C.F.R. §§ 404.1509, 404.1520(a)(4)(ii). Jessica bears the burden of proving that her mental impairments are severe. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987) (stating that the claimant bears the burden of showing that he has a "severe" impairment).

When evaluating mental impairments, the Regulations require the ALJ to use a special technique to rate a claimant's degree of limitation in each of the functional areas based on the extent to which a plaintiff's impairment "interferes with the [] ability to function independently, appropriately, effectively, and on a sustained basis." 20 C.F.R. §§ 404.1520a(c)(2), 416.920a(c)(2). The four functional areas include: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace, and (4) adapting or managing oneself. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(A)(2)(b), § 12.04(B). A rating of "none" or "mild" generally calls for a conclusion that the impairments are not severe unless the evidence indicates more than a minimal limitation in the claimant's ability to do basic work activities. 20 C.F.R. § § 404.1520a(d)(1), 416.920a(d)(l). If the ALJ determines that the claimant does not have a severe impairment or combination of impairments, a finding of not disabled is made at step two, and the sequential process comes to an end. On the other hand, if the claimant has at least one impairment that is deemed severe, the process moves on to the third step.

Here, when considering whether Jessica's mental health impairments are severe impairments in step two of the decision, the ALJ noted Jessica's history of mental health treatment, her complaints of mood swings, suicidal ideation, crying spells, anger, irritability, and social isolation. R. 21. The ALJ noted that Jessica was hospitalized for five days after overdosing on medication, was diagnosed with depression and PTSD, and her mental examinations in 2017 and 2018 reflected anxious and sad mood, irritability, guarded demeanor, and restlessness.

9

Notably, the ALJ did not discuss Jessica's mental health treatment records further, either in step two or any other section of his decision.

The ALJ determined that Jessica's medically determinable mental impairments, considered singly and in combination, do not cause more than minimal limitation in her ability to perform basic mental work activities and are non-severe. R. 22. The ALJ reviewed the opinion of Dr. Leizer that Jessica had no limitations with the domains of understanding, remembering or applying information; ability to interact with others; and concentration, persistence, or maintaining pace; and mild limitations with adapting or managing herself. The ALJ stated, "[t]his opinion is persuasive because it is generally consistent with and supported by the evidence. The claimant's functional limitations are discussed in detail below." R. 22.

The ALJ reviewed Dr. Montgomery's opinion that Jessica's mental impairments were severe, and that she had mild limitations with the domains of understanding, remembering or applying information, and adapting or managing oneself; and moderate limitations in the ability to interact with others; and the ability to concentrate, persist, or maintain pace. Specifically, Dr. Montgomery found that Jessica had moderate limitations in the ability to carry out detailed instructions, maintain attention and concentration for extended periods, complete a normal workday and workweek without interruptions from psychologically based symptoms, perform at a consistent pace with an unreasonable number and length of rest periods, interact appropriately with the general public, and get along with co-workers or peers without distracting them or exhibiting behavioral extremes. The ALJ stated, "[t]his opinion is not persuasive because it is not consistent with the record. The totality of the record does not support this degree of limitation. As stated, the claimant's functional limitations are no greater than mild as explained below."

The ALJ analyzed each of the four broad functional areas of mental functioning, and found that Jessica had no limitations with understanding, remembering, or applying information, or adapting or managing herself. R. 22–23. The ALJ found that Jessica had mild limitations with the domains of interacting with others and concentration, persistence or maintaining pace. Id. The ALJ concluded that because Jessica's mental impairments cause no more than "mild" limitation in any of the functional areas and the evidence does not indicate that there is more than a minimal limitation in her ability to do basic work activities, they are non-severe. R. 23. The ALJ did not further discuss Jessica's mental health treatment or any functional impact of her mental impairments in his decision.

Jessica asserts that the ALJ erred by providing no explanation or rationale to support his finding that Dr. Leizer's opinion was more persuasive than Dr. Montgomery's. I agree that the ALJ failed to sufficiently explain his analysis of the two competing opinions. I further find that the ALJ's inadequate explanation, combined with Jessica's history of mental health complaints and treatment, and the ALJ's failure to consider her mental health records or impairments at a later step of the decision, prevent this Court from determining whether the ALJ's decision is supported by substantial evidence.

Under the regulations, the ALJ "will not defer or give any specific evidentiary weight, including controlling weight" to any medical opinions or prior administrative medical findings, including those from the claimants' medical sources.[6] 20 C.F.R. §§ 404.1520c(a), 416.920c(a). The most important factors in evaluating the persuasiveness of these medical opinions and prior

---

[6] 20 C.F.R. §§ 401.1520c, 416.920c applies to claims filed on or after March 27, 2017. For claims filed before this date, the rules in § 404.1527 apply.

11

administrative medical findings are supportability and consistency, and the ALJ will explain how he considered these two factors in his decision.[7] Id.

Here, the ALJ summarily determined that Dr. Leizer's opinion was "generally consistent with and supported by the evidence," and Dr. Montgomery's opinion was "not consistent with the record," and "the totality of the record does not support this degree of limitation." R. 22. The ALJ did not explain these findings in further detail. The ALJ performed his own review of the four areas of mental health functioning, but did not explain how his findings related to or were consistent with Dr. Leizer and Montgomery's opinions.

The Commissioner asserts that under the new regulations, "the ALJ was not required to provide an explanation for finding Dr. Leizer's prior administrative medical finding more persuasive than that of Dr. Montgomery." Comm'r Br. Summ. J. p. 9. "In this matter, the ALJ found only one of these two prior administrative medical findings to be supported by the record, that of Dr. Leizer. Therefore, no duty to explain how the ALJ considered the factors other than consistency and supportability existed here." Id.

The Commissioner is correct that the regulations require the ALJ to "explain how the factors of supportability and consistence were considered," and the ALJ is not required to explain the remaining factors. However, simply stating whether an opinion is or is not "supported by" or "consistent with" the record does not qualify as *explaining* how the factors of supportability and consistency were considered for a medical source's opinions. It is the explanation that is missing here.

---

[7] "Supportability" means "[t]he extent to which a medical source's opinion is supported by relevant objective medical evidence and the source's supporting explanation." Revisions to Rules, 82 Fed. Reg. at 5853; see also 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1). "Consistency" denotes "the extent to which the opinion is consistent with the evidence from other medical sources and nonmedical sources in the claim." Revisions to Rules, 82 Fed. Reg. at 5853; see also 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2).

"Not only must an ALJ consider the five factors set forth in the regulation, the ALJ must—at a minimum— explain his or her consideration of the supportability and consistency factors." Garrett v. Kijakazi, No. 1:21-cv-46, 2022 WL 1651454, at *2 (W.D.N.C. May 23, 2022) (citing Danny Z. v. Saul, 531 F. Supp. 3d 871, 883–84 (D. Vt. 2021) (explaining that failure to "explicitly discuss the supportability and consistency of medical opinions" can result in remand)); see Crystal W. v. Kijakazi, No. 5:21-cv-27, 2022 WL 2953704, at *5 (W.D. Va. July 26, 2022) ("Although the ALJ discussed the consistency and supportability of Dr. Prieur's opinion, he failed to offer an adequate explanation for his findings with respect to the consistency of that opinion."). Indeed, in Gloria M. v. Kijakazi, this court stated, "despite the regulatory changes regarding the evaluation of medical opinions, SSR 96-8p continues to provide that where 'the RFC assessment conflicts with an opinion from a medical source, the [ALJ] *must explain* why the opinion was not adopted.'" No. 4:20-cv-44, 2022 WL 909043, at *7 (W.D. Va. March 28, 2022) (quoting SSR 96-8p, 1996 WL 374184, at *7 (emphasis added)). If the ALJ does not adequately explain the weight given to each medical opinion, the court cannot meaningfully review the ALJ's decision, and remand is warranted. Michael B. v. Saul, No. 7:19-cv-751, 2020 WL 7497803, at *7 (W.D. Va. Dec. 21, 2020) (citing Monroe, 826 F. 3d at 190).

Here, the ALJ noted that he found Dr. Leizer's opinion supported and consistent with the record, but found Dr. Montgomery's opinion not supported and consistent with the record. The ALJ also stated why he found mild or no limitations in each domain. The ALJ did not explain how his findings related to the opinions of the state agency physicians, the only mental health opinions in the record. The ALJ also did not further discuss or explain his analysis of Jessica's mental health impairments in step four of the decision.

Further, the ALJ's conclusion that Jessica's mental health impairments are non-severe and are not expected to impact her ability to work is not clearly supported by the totality of the record, such that the record itself informs the weight given to the state agency opinions.  This is not a situation where Jessica's mental health complaints and treatment are negligible. Jessica was consistently diagnosed with multiple mental health impairments for many years during the relevant period, including bipolar disorder, depression, anxiety, and PTSD.  Her mental health conditions were consistently treated with significant prescription medications. The records reflect that those medications alleviated Jessica's symptoms but did not resolve them.  She reported symptoms of depression, anxiety, social isolation, and PTSD throughout the relevant period, many of which might be expected to impact her ability to work.  Given Jessica's consistent and lengthy mental health complaints and treatment, and the conflicting opinions of state agency opinions in the record regarding the severity of her mental health complaints, the ALJ's finding that Jessica's mental health impairments are non-severe, *i.e.*, such a slight abnormality which has such a minimal effect that they would not be expected to interfere with her ability to work, requires a more fulsome explanation.

"Although these amended regulations do away with the idea of assigning 'weight' to medical opinions, the ALJ's reasons for finding the opinion of a medical source unpersuasive must still be supported by substantial evidence." Sullivan v. Kijakazi, No. 5:20-cv-569, 2022 WL 880030, at *6–7 (E.D.N.C. Feb. 28, 2022). Despite the new regulations for evaluating physician opinion, the ALJ continues to have an obligation to "include a narrative discussion describing how the evidence supports each conclusion." Monroe v. Colvin, 826 F. 3d 176, 190 (4th Cir. 2016).  As the court stated in Garrett v. Kijakazi, although the ALJ specifically noted that he considered supportability and consistency, "the regulations require more." 2022 WL 1651454, at

*2. Thus, the Court cannot determine whether the ALJ's finding at step two of the decision that Jessica's mental impairments are non-severe is supported by substantial evidence and remand is warranted.

## CONCLUSION

For the reasons set forth above, I **RECOMMEND** entering an order **DENYING** the Commissioner's motion for summary judgment, **GRANTING in part** Jessica's motion for summary judgment, and **REMANDING** this case to the Commissioner.

The Clerk is directed to transmit the record in this case to Norman K. Moon, United States District Judge, and to provide copies of this Report and Recommendation to counsel of record. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation within fourteen (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by me that is not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1) as to factual recitations or findings as well as to the conclusion reached by me may be construed by any reviewing court as a waiver of such objections, including the waiver of the right to appeal.

Entered: February 8, 2023

*Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge